IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:15-CV-00169-D

**Madonna Fairchild Robinson,**

          Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of Social Security,

          Defendant.

**Memorandum & Recommendation**

Plaintiff Madonna Robinson instituted this action on September 21, 2015, to challenge the denial of her application for social security income. Robinson claims that the Social Security Administration erred in failing to consider additional evidence which, she contends, demonstrates her severe mental impairments. Both Robinson and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 27, 29.

After reviewing the parties' arguments, the court has determined that there is substantial evidence to support ALJ Roseanna Gudzan's decision. The Appeals Council properly determined that the additional evidence did not require remand of the matter for further consideration. Therefore, the undersigned magistrate judge recommends that the court deny Robinson's motion, grant Colvin's motion, and affirm the Commissioner's decision.[1]

---

[1] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

**I.    Background**

On July 20, 2011, Robinson filed an application for supplemental security income alleging a disability that began on January 1, 2003, subsequently amended to July 20, 2011. After her claim was denied at the initial level and upon reconsideration, Robinson appeared before ALJ Gudzan for a hearing to determine whether she was entitled to benefits. ALJ Gudzan determined Robinson was not entitled to benefits because she was not disabled.  Tr. at 23–33.

ALJ Gudzan found that Robinson had the following severe impairments: borderline intellectual functioning; learning disorder; attention deficit hyperactivity disorder ("ADHD"); major depressive disorder; post-traumatic stress disorder ("PTSD"); and a history of drug and alcohol abuse. *Id*. at 25. ALJ Gudzan also found that these impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* at 26. ALJ Gudzan then determined that Robinson had the residual functional capacity ("RFC") to perform work[2] with the following limitations: she can understand, remember, and carry out simple, routine, repetitive tasks for two hours at a time; can adapt to changes in a routine work setting if they are infrequent and gradually introduced; can make simple work-related decisions; can have incidental conversations with co-workers, supervisors, and the public throughout the workday or shift; should work primarily with things rather than people; and her production demands are limited to having assigned tasks to complete by the end or the workday or shift. *Id*. at 27. ALJ Gudzan also concluded that Robinson had no past relevant work but that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she was capable of performing. *Id*. at 31–32. These include kitchen helper, laundry worker,

---

[2] ALJ Gudzan made no explicit finding as to the exertional level of work Robinson could perform. However, she referenced, at step five, that Robinson's non-exertional limitations compromised her ability to perform work at all exertional levels.

2

housekeeper, and box-sealing inspector. *Id.* at 32. Thus, ALJ Gudzan found that Robinson was not disabled. *Id.* at 33.

Robinson then requested a review of ALJ Gudzan's decision by the Appeals Council and submitted additional evidence as part of her request. After reviewing the additional evidence and incorporating parts of it into the record, the Appeals Council denied Robinson's request for review on July 21, 2015. *Id.* at 1–6. Robinson commenced this action by filing a complaint pursuant to 42 U.S.C. § 405(g) on September 21, 2015. D.E. 5.

**II.     Analysis**

    **A.**    **Standard for Review of the Acting Commissioner's Final Decision**

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

    **B.**    **Standard for Evaluating Disability**

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments

significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Background

Robinson has a history of mental health issues. At the time of her disability onset date, Robinson lived in Pennsylvania and received treatment at Temple University Department of Psychiatry and Philadelphia. College of Osteopathic Medicine. Tr. at 323–24, 465. In September 2011, Robinson was involuntarily committed to Jefferson University Hospital for suicidal behavior. *Id*. at 388.

In November 2011, Robison had a psychological consultation with Dr. Sandra Koffler. *Id*. at 363–70. Testing revealed a full score IQ of 76. *Id*. at 367. Dr. Koffler assessed marked limitations in her ability to carry out detailed instructions, moderate limitation with understanding and remembering detailed instructions, and moderate limitation with making simple judgments on work-related decisions. *Id*. at 369. She further opined that Robinson had moderate limitations in her ability to interact appropriately to others and moderate limitations in her ability to respond appropriately to routine work changes and usual work pressures. *Id*. Later

4

that month, state agency consultant Dr. Frank Myrkalo concluded that Robinson could perform simple, routine, repetitive tasks; follow simple 1-2 step directives; understand and retain simple instructions; cope with minor work-related demands; and make simple, work-related decisions. *Id.* at 78.

In January 2012, Dr. Adil Mohammed of Temple University Department of Psychiatry saw Robinson, who reported agitation and difficulty concentrating. *Id.* at 416–17. Dr. Mohammed prescribed medication for her ADHD and recommended that she continue psychotherapy. *Id.* at 418. She subsequently reported that she was sleeping better and that she was better managing her anger. *Id.* at 425, 432, 435, 438, 441.

In February 2013, Robinson reported to Daikon Family Life Services. *Id.* at 382–83. Her diagnoses included major depressive disorder and PTSD. *Id.* at 382. Providers assigned a Global Assessment of Functioning ("GAF")[3] score of 50. *Id.* The following month, Dr. Douglas Reed performed a psychiatric evaluation. *Id.* at 388–90. He noted that Robinson was anxious but did not recommend medications as she was pregnant at that time. *Id.* He assigned a GAF of 50 and assessed PTSD, cannabis dependence, alcohol abuse, and mild mental retardation. *Id.* at 389.

In December 2013, Robinson began treatment at MedNorth Health Center. Carol Flaugher, a certified nurse practitioner, noted that Robinson reported feelings of hopelessness and loss of interest in activities. *Id.* at 538–40. Flaugher observed decreased eye contact and a slowed thought process. *Id.* at 540. Robinson returned to MedNorth in February 2014 for fatigue. *Id.* at 587–88).

---

[3] The GAF scale measures a person's overall psychological, social, and occupational functioning. Am. Psych. Assn., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. A GAF score between 41–50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work)."

Additional evidence following ALJ Gudzan's decision includes June 2014 medical records when Robinson was admitted to New Hanover Regional Medical Center ("NHRMC") following a domestic violence call and reported suicidal ideations. *Id*. at 635–40. The following day, Robison denied any suicidal thoughts and reported that she was not taking her medication. *Id*. at 635, 640.

Robinson returned to MedNorth in August 2014 where Flaugher noted her agitation and declining mental health. *Id*. at 567. She diagnosed anxiety disorder. *Id*. Licensed clinical social worker Evie Nicklas saw Robinson and noted she was agitated and had difficulty staying on task. *Id*. at 570. Robinson agreed to a safety plan and that she would not harm herself or others. *Id*. at 571. Nicklas opined that Robinson had limited insight and was easily frustrated. *Id*. at 571–72. Upon follow-up, Nicklas assessed depression, borderline intellectual functioning, and PTSD. *Id*. at 566. Robison reiterated her plan not to harm herself or others. *Id*. at 562.

Licensed clinical social worker Benjamin Manning of A Helping Hand of Wilmington completed a comprehensive clinical assessment of Robinson in September 2014. *Id*. at 592–607. Robison reported symptoms of depression, mania, and PTSD, but also noted she had not been taking her medication. *Id*. at 606. Manning recommended medication, individual therapy and community support team services. *Id*. at 607. He assessed schizoaffective disorder, bipolar type, and PTSD. *Id*. at 606.

In April 2015, Nicklas issued a clinical statement regarding Robinson's condition. *Id*. at 8–11. She noted assessments of moderate intellectual disabilities, depression, and PTSD. *Id*. at 8. She opined that Robinson would have marked difficulties in activities of daily living and moderate difficulties in social functioning. *Id*. Nicklas noted that she experienced deficiencies in concentration, persistence, or pace that made Robinson unable to complete tasks in a timely

manner. *Id.* at 11. She further opined that Robinson would be unable to complete a normal workday or work week and would be impaired in her ability to accept instruction and respond to criticism from supervisors. *Id.* at 10.

### D. Additional Evidence

Robinson argues that the Social Security Administration erred when it failed to remand the case for further consideration based on the additional evidence she submitted after ALJ Gudzan's decision. The Appeals Council found that the additional evidence did not provide a basis for changing the ALJ's decision. Tr. at 1–4. Robinson reiterates this claim that remand is warranted based on the additional evidence. The Commissioner contends that the Appeals Council properly concluded that the additional evidence did not warrant a reversal of ALJ Gudzan's determination.

The Appeals Council must consider evidence submitted by a claimant with the request for review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision. *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95–96 (4th Cir. 1991); 20 C.F.R. §§ 404.976(b)(1), 416.1476(b)(1) ("The Appeals Council will consider all the evidence in the administrative law judge hearing record as well as any new and material evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision."). Evidence is new if it is not duplicative or cumulative, and material if there is a "reasonable possibility that the new evidence would have changed the outcome of the case." *Wilkins*, 953 F.2d at 96. "[T]he Appeals Council must consider new and material evidence relating to that period prior to the ALJ decision in determining whether to grant review, even though it may ultimately decline review." *Id.* at 95. However, the Appeals Council does not need to explain its reason for denying review of an

7

ALJ's decision. *Meyer v. Astrue*, 662 F.3d 700, 702 (4th Cir. 2011). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Felts v. Astrue*, No. 1:11-cv-0054, 2012 WL 1836280, at *1–2 (W.D. Va. May 19, 2012).

In concluding that Robinson was not disabled, ALJ Gudzan noted that the record lacked evidence that her mental health condition had been present for 12 months or was expected to last at least that long. Tr. at 30–31. To challenge this finding, Robinson has submitted the following additional evidence in support of her claim:

(1) Records from June 2014 where Robinson was admitted to the NHRMC following a domestic violence incident. Although records describe a suicide attempt, Robinson insisted the following day that she was not suicidal. *Id*. at 634–43.

(2) An August 25, 2014 treatment notes from MedNorth Health Center referencing Robinson's declining mental health. She was seen by Evie Nicklas, a licensed clinical social worker, and Carol Flaugher, a women's health practitioner. *Id*. at 567–72.

(3) Treatment notes dated September 3, 2014 by Benjamin Manning, a licensed clinical social worker at A Helping Hand of Wilmington, reflecting that Robinson had not been taking any medication. He diagnosed her with schizoaffective disorder, bipolar type, and post-traumatic stress disorder. *Id*. at 592–607.

(4) An April 16, 2015 statement from Nicklas opining that Robinson had marked limitations in activities of daily living and moderate limitations in social functioning. She further concluded that Robinson would be unable to complete a normal workday or work week and that she would have difficulty responding appropriately to supervisors. *Id*. at 8–11.

The Appeals Council incorporated the records from June 2014, August 2014, and September 2014, but excluded the April 2015 statement by Nicklas. *Id*. at 1–6.

The additional evidence submitted by Robison undoubtedly qualifies as "new" inasmuch as it was not in the record before ALJ Gudzan. In fact, these new records were generated after the hearing.

Robinson also contends that the records demonstrate that her mental conditions have persisted for a period of at least 12 months. However, the newly-submitted records do not reflect Robinson's condition between the time of her amended onset date through the date of ALJ Gudzan's decision. *See Booker v. Colvin*, No. 1:13–cv–2033–TMC, 2014 WL 6816878 (D.S.C. Dec. 4, 2014) (analyzing whether evidence created after the ALJ's decision linked back to a prior condition and thus required consideration) (citing *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F. 3d 337 (4th Cir 2012)). Robinson has failed to show that the new exhibits are relevant to her condition during the time period in question. *See Nance v. Astrue*, No. 7:10-cv-218-FL, 2011 WL 3899754, at *4 (E.D.N.C. Sept. 20, 2011) (explaining that claimant bears this burden).

Additionally, as the Appeals Council noted, Nicklas's April 2015 statement post-dates ALJ Gudzan's decision. To the extent Robinson attempts to address her disability status after the April 29, 2014 decision, the proper avenue to do so is to file a new claim. *See* 20 C.F.R. § 404.976(b)(1), 416.1476(b)(1) (stating that, on review, "[i]f [a claimant] submit[s] evidence which does not relate to the period on or before the date of the [ALJ] hearing decision, the Appeals Council will return the additional evidence to [the claimant] with an explanation as to why it did not accept the additional evidence and will advise [the claimant] of [his/her] right to file a new application."). The Appeals Council so advised Robinson. Tr. at 2.

Moreover, with the exception of the hospital records from June 2014, the additional records submitted are not from "acceptable medical sources" but from licensed clinical social workers and a nurse practitioner, who qualify as "other sources" under the Regulations. 20

9

C.F.R. §1513(d). While these opinions may be relevant in providing insight into the severity of Robinson's impairments and her ability to function, they cannot establish the presence of a medically determinable impairment. Thus, the weight they may be afforded in establishing Robinson's mental health condition would not be controlling.

Finally, as the Commissioner points out, the additional records do not show, as Robinson posits, that her mental health conditions continued at a severe level. The June 2014 records from NHRMC reflect possible suicidal ideations that Robinson recanted the following day. Tr. at 635, 640. The treatment notes from MedNorth demonstrate that Robinson was neither hopeless nor had lost interest in activities. *Id*. at 556, 574, 577, 581, 588. They show she expressed excitement about her pregnancy, that she was taking better care of herself, and that she was following her safety plan of not harming herself or others. *Id*. at 562. Her primary complaints to providers at MedNorth appear unrelated to her mental health. *Id*. at 545–89.

In light of all these factors, the additional evidence submitted by Robinson cannot be construed as material inasmuch as there is not a reasonable possibility that it would have changed the outcome of the case. *See Wilkins*, 953 F.2d at 96. Accordingly, her argument on this issue lacks merit and should be rejected. There is substantial evidence to support ALJ Gudzan's determination based on the medical evidence, including opinions from Drs. Koffler (Robinson has slight restrictions in understanding, remembering, and carrying out short, simple instructions); Myrkalo (Robinson could perform simple, routine, repetitive tasks; follow simple 1-2 step directive; understand and retain simple instructions; cope with minor work-related demands; and make simple, work-related decisions); Mohammed (Robinson reported that she concentrated well); and Reed (although Robinson's mood was down and anxious, her affect was

much brighter, she smiled frequently, and had appropriate interaction). Therefore, the undersigned recommends the court deny that Robinson's motion.

### III. Conclusion

For the forgoing reasons, the court recommends that the court deny Robinson's Motion for Judgment on the Pleadings (D.E. 27), grant Colvin's Motion for Judgment on the Pleadings (D.E. 29), and affirm the Commissioner's decision.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the**

**Memorandum and Recommendation.** *See Owen v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: July 21, 2016

_____
Robert T. Numbers, II
United States Magistrate Judge